UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25169-BLOOM

DANIEL JOSEPH TOUIZER,

      Petitioner,

v.

ATTORNEY GENERAL OF THE
UNITED STATES, *et al.*,

      Respondents.
_____/

### ORDER ON EMERGENCY MOTION FOR HEARING AND MOTION FOR TEMPORARY RESTRAINING ORDER

**THIS CAUSE** is before the Court upon Petitioner Daniel Joseph Touizer's ("Touizer") Expedited Motion for Temporary Restraining Order, ECF No. [10] ("TRO Motion"), and Emergency Motion for Hearing on Expedited Motion for Temporary Restraining Order or, Alternatively, For an Order Directing Respondents to Immediately Release Petitioner to Home Confinement, ECF No. [33] ("Emergency Motion") (together, "Motions"). The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case and the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are denied as moot, and this case is dismissed.

**I.    BACKGROUND**

Touizer is not a stranger to this Court. On November 21, 2017, Touizer was charged by indictment with conspiracy to commit mail and wire fraud (Count 1), mail fraud (Counts 2-7), wire fraud (Count 8), conspiracy to commit money laundering (Count 9), and money laundering

(Counts 10-11). *United States v. Touizer*, Case No. 17-cr-60286, ECF No. [26].[1] In pertinent part, from approximately 2010 through 2017, Touizer and his co-conspirators participated in a scheme to defraud that raised millions from the sale of stock and other interests in Touizer's investment companies, which included Omni Guard, Infinity Diamonds, Infinity Direct Insurance (doing business as Covida Holdings), Wheat Capital Management, and Wheat Self-Storage Partners I, II, and III. Crim. ECF No. [94]. Touizer was the founder, controlling shareholder, and Chief Executive Officer of these various companies, and hired his co-conspirators to solicit investors from "phone rooms" that he oversaw. *Id.* From the phone rooms, the co-conspirators involved would call potential investors from lead lists, and when a person showed interest in investing, the person was referred to Touizer so that he could "close" the deal. *Id.* Touizer acted in this capacity for nearly all of the stock sales, and was the organizer and leader of the criminal conspiracy in which he and his co-conspirators often used aliases or provided false names to hide their true identities in order to use investor proceeds to pay themselves undisclosed commissions and fees. *Id.*

On May 11, 2018, Touizer pleaded guilty to Count 1 charging conspiracy to commit mail and wire fraud. Crim. ECF Nos. [92], [150]. On July 24, 2018, the Court sentenced Touizer to 68 months imprisonment followed by 3 years of supervised release. Crim. ECF Nos. [156], [161]. In addition, Touizer was ordered to pay restitution in the amount of $1,810,000.00. Crim. ECF No. [231]. Touizer was serving his sentence at FCI Miami Satellite Camp from September 20, 2017 until May 22, 2020, when he was placed in home confinement.

Touizer commenced the instant case by filing a Verified Petition for Writ of *Habeas Corpus* Pursuant to [2]8 U.S.C. § 2241, ECF No. [1], in which he alleges violations of his First,

---

[1] The Court will refer to docket entries in Touizer's underlying criminal case as "Crim. ECF No. [x]."

Fifth, and Eighth Amendment rights by the Bureau of Prison ("BOP"). Thereafter, Touizer filed an Amended Petition, ECF No. [12] ("Amended Petition"), adding the Warden of FDC Miami as a Respondent.

According to Touizer, he was released to home confinement pursuant to the CARES Act by the BOP on May 22, 2020. He contends that the BOP determined that his serious respiratory issues placed him at a heightened risk of severe illness and death from COVID-19. After spending approximately four months in home confinement at the Salvation Army Residential Reentry Program ("RRP"), the BOP advised him that he was no longer permitted to speak with victims in his underlying criminal case. As alleged in the Amended Petition, Touizer is a defendant in various pending civil cases in which he is attempting to prevent himself and approximately 50 other investors of being divested of interest in the Wheat entities. According to Touizer, the other investors have sought his assistance, he communicated with them when he was at FCI Miami, and BOP did not previously attempt to impose a restriction on his activities or communications.

Nevertheless, as alleged in the Amended Petition, when Touizer was on home confinement, BOP suddenly attempted to prevent Touizer from working with the Wheat entities investors. In October 2020, officials at the RRP told Touizer that he was not permitted to communicate with individuals alleged to be victims in his underlying criminal case. On or about November 5, 2020, the director of the RRP sent Touizer an email demanding that he sign a document agreeing to the restriction prohibiting him from communicating with any victims of his offense. Touizer did not sign the document because he had questions about the agreement.

On November 10, 2020, Touizer attended a meeting at the Salvation Army, which he believed was being held to answer his questions, but instead was converted into a hearing. That

hearing resulted in Touizer's arrest and remand to prison for his purported refusal to follow RRP directives.

Touizer now contends that Respondents violated his First Amendment rights by attempting to pressure him to sign a document restricting his communications and re-incarcerating him in retaliation for his purported failure to do so.[2] Touizer claims his Fifth Amendment procedural and substantive due process rights have been violated in imposing the communication restriction in violation of several regulations and by remanding him to prison without adequate notice or hearing, and his Eighth Amendment right to be free from cruel and unusual punishment was violated by reincarcerating him despite his health and vulnerability to COVID-19. In the Amended Petition, Touizer requests that the Court order Respondents to immediately release him to home confinement, rescind any communication restriction, and enter a declaration that Respondents' detention of him violates his First, Fifth and Eighth Amendment rights.

Touizer has also filed his TRO Motion, requesting the Court order Respondents to immediately release him back into home confinement. In addition, in the Emergency Motion, Touizer requests that the Court set a hearing on the TRO Motion, or in the alternative, enter an order directing Respondents to immediately release him to home confinement, based upon the BOP's subsequent overruling the disciplinary action against him.

## II.     LEGAL STANDARD

The Court of Appeals for the Eleventh Circuit has explained that the four factors to be considered in determining whether to grant a temporary restraining order or a preliminary injunction are the same. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). Namely, a movant must establish "(1) a substantial likelihood of success on the merits; (2) that

---

[2] Touizer also contends that Respondents' actions violate the First Amendment rights of those individuals with whom he was communicating.

irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Id.* at 1225-26 (citing *Ingram v. Ault*, 50 F.3d 898, 900 (11th Cir. 1995); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

### III. DISCUSSION

Section 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A prisoner sentenced by a federal court . . . may file a petition for a writ of habeas corpus to challenge the execution of his sentence, such as the deprivation of good-time credits or parole determinations." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851F.3d 1076, 1092-93 (11th Cir. 2017). In this case, Touizer's claims of constitutional violations are premised upon Respondents' actions related to the allegedly wrongful revocation of his home confinement. As Touizer is challenging the execution, not the validity, of his sentence, the Amended Petition is cognizable under § 2241. *See Williams v. Flournoy*, 732 F. App'x 810, (11th Cir. 2018) (noting that "relief available under Section 2255 may be inadequate or ineffective if the defendant is challenging the execution (rather than the validity) of his sentence) (citing *McCarthan*, 851 F.3d at 1089, 1093)).

Nevertheless, pursuant to Rule 1(b) of the Rules Governing Section 2254 Cases in the United States District Courts, Rule 4 may be applied to cases brought pursuant to 28 U.S.C. § 2241. Therefore, summary dismissal of a habeas corpus action brought pursuant to 28 U.S.C. § 2241 is appropriate when the petition plainly reveals that relief is not warranted under Rule 4. *See* 28 U.S.C. § 2243 (providing that a section 2241 petition can be dismissed unless it appears from the application that the person detained is entitled to the relief); *McFarland v. Scott*, 512 U.S. 849,

856 (1994). Before considering the merits of the Motions, the Court must first determine whether Touizer is entitled to the relief he seeks.

As a result of Respondents' alleged violations of Touizer's constitutional rights in revoking his home confinement and reincarcerating him, Touizer seeks re-release to home confinement. However, this Court has no authority to grant such relief.

The home confinement statute provides the following:

> Home confinement authority.—The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C. § 3624(c)(2).

Moreover, the CARES Act expanded the BOP's authority under § 3624(c)(2):

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act § 12003(b)(2). "The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of house confinement." *United States v. Phillips*, No. 6:16-CR-198-Orl-28GJK, 2020 WL 2219855, at *1 (M.D. Fla. May 7, 2020) (footnote omitted). "A district court reviewing a claim under § 2241 does not have authority to circumvent the established procedures governing the various forms of release enacted by Congress." *Haymore v. Joseph*, No. 3:20cv5518-MCR/MAF, 2020 WL 6587279, at *4 (N.D. Fla. Sept. 21, 2020) (citing *Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020)).

Based on the clear statutory language of 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, this Court has no authority to grant Petitioner's request for placement in home

confinement. Rather, § 3624(c)(2) grants the BOP the exclusive authority to determine an inmate's place of confinement. "The CARES Act did not remove the exclusive authority of the BOP to designate the place of an inmate's confinement. 'The Attorney General — and by delegation the BOP — has exclusive authority and *discretion* to designate the place of an inmate's confinement.'" *Phillips*, 2020 WL 2219855, at *1 (quoting *Burg v. Nicklin*, No. EP-19-CV-24-FM, 2019 WL 369153, at *3 (W.D. Tex. Jan. 29, 2019) (emphasis in original)); *see also United States v. Daniels*, No. 4:08-CR-0464-SLB, 2020 WL 1938973, at *1 (N.D. Ala. Apr. 22, 2020) ("The BOP designates the place of defendant's imprisonment. The Court does not have authority to dictate placements to the BOP. While the CARES Act gives the BOP broad discretion to ***expand*** the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision." (emphasis added) (citations omitted)); *United States v. Engleson*, No. 13-CR-340-3(RJS), 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while the court can make a recommendation, the BOP retains the ultimate decision of whether to release an inmate to home confinement).

> It is important to understand that a request for home confinement under the CARES Act is different than a reduction-in-sentence (RIS) request based upon compassionate release. The BOP is utilizing its authority under 18 U.S.C. [§ 3624(c)(2)] . . . — not the compassionate release provision of 18 U.S.C. § 3582(c) — to effectuate the Attorney General's directive to the BOP regarding home confinement in connection with the CARES Act. [This statute does] not authorize a federal court to order the BOP to release a prisoner. *See United States v. Calderon*, [801 F. App'x 730, 731-32 (11th Cir. 2020)] (explaining that under § 60541(g)(1)(A) the Attorney General "may" release eligible elderly offenders, and district court was without jurisdiction to grant relief); *see also United States v. Lovelace*, No. 12-402, 2014 WL 4446176, at *2 (N.D. Ga. Sept. [9,] 2014) ("[T]he Court has no authority to grant Defendant's request and order the Bureau of Prisons to release Defendant to a halfway house." (citing 18 U.S.C. §§ 3621(b) & (b)(5))).

*United States v. Collins*, No. CR 616-014, 2020 WL 2529487, at *1 (S.D. Ga. May 18, 2020) (footnote omitted); *United States v. Smith*, No. 8:17-CR-412-T-36AAS, 2020 WL 2512883, at *3 (M.D. Fla. May 15, 2020) ("[U]nder the CARES Act, the determination of whether inmates qualify

7

for home confinement rests with the BOP Director, and the Court lacks authority to direct the BOP to release the defendant to home confinement[.]" (citing *United States v. Robles*, CR 3:17-343, 2020 WL 2306847, at *5 (M.D. Pa. May 8, 2020))).

Indeed, the CARES Act "has nothing to say about the district court's authority to order home confinement during the covered emergency period." *Daniels*, 2020 WL 1938973, at *2. Instead, "under the CARES Act, the BOP, through the Attorney General's delegation, retains the 'exclusive authority and sole discretion to designate the place of an inmate's confinement,' including home confinement." *Id.*; *see also de Jesus v. Woods*, No. 2:19-cv-121-WHA, 2019 WL 3326199, *4 (M.D. Ala. June 21, 2019) (BOP has the "exclusive authority and sole discretion" to place inmates in home confinement (quoting *Deffenbaugh v. Sullivan*, No. 5:19-HC-2049-FL, 2019 WL 1779573, *1 (E.D.N.C. Apr. 23, 2019))); *United States v. Campbell*, No. 3:12-CR-24 (CAR), 2014 WL 12911957, *1 (M.D. Ga. Sept. 17, 2014) ("Defendant's request to be placed on home confinement lies within the sole discretion of the BOP, and any order from this Court would merely be a recommendation to the BOP to consider placing Defendant in home confinement." (citing 18 U.S.C. § 3621(b))).

Because the Court lacks authority to grant the requested relief under 18 U.S.C. § 3624(c)(2) and § 12003(b)(2) of the CARES Act, Touizer is not entitled to relief and the Amended Petition must therefore be dismissed.

Moreover, Touizer's due process challenge is improper and appears to be moot in any event. As pleaded, he claims that his reincarceration deprived him of his liberty interest – presumably to be in home confinement. However, a duly convicted prisoner does not have a liberty interest in his place of confinement. *See Williams*, 732 F. App'x at 812 (explaining that the Due Process Clause does not protect an inmate in the context of transfer from one facility to another,

nor does he have the right to be housed in a particular facility). Indeed, "a defendant's valid conviction authorizes the government to 'confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution.'" *Id.*

Even assuming Touizer's due process challenge is proper, it appears to be moot. Although Touizer claims that he was reincarcerated based upon a flawed process, the charges against him have now been expunged based upon a finding by the Discipline Hearing Officer ("DHO") that his rights were violated and the Center Discipline Committee's decision was not warranted. *See* ECF No. [44-1]. As such, the Court cannot grant meaningful relief with respect to his claim, and the claim is therefore moot. *See Gorrell v. Hastings*, 541 F. App'x 943, 946 (11th Cir. 2013) ("A claim must be dismissed as moot if the issue presented is no longer 'live,' such that the courts cannot grant meaningful relief." (citing *Soliman v. U.S. ex rel INS*, 296 F.3d 1237, 1242 (11th Cir. 2002))).

In addition, to the extent that Touizer intends to further challenge the circumstances of his reincarceration, such claims are not the proper subject of a habeas petition. *See Gorrell*, 541 F. App'x at 945 ("when an inmate raises a challenge to the 'circumstances of his confinement' rather than the execution of his sentence, the claim should be brought in a civil rights action rather than a habeas petition." (citation omitted)).

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Amended Petition, **ECF No [12]**, is **DISMISSED**, and the Motions, **ECF Nos. [10]**, **[33]**, are **DENIED AS MOOT**. The Clerk of Court is directed to **CLOSE** this case.

Case No. 20-cv-25169-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on February 2, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record